UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LEE M. JOHNSON,

        Plaintiff,

v.                                Case No. 3:23-cv-941-WWB-MCR

FISHLEY and PHILLIPS,

        Defendants.
_____

## ORDER

Plaintiff, Lee M. Johnson, an inmate of the Florida Department of Corrections ("**FDOC**"), is proceeding *pro se* on an Amended Complaint for Violation of Civil Rights under 42 U.S.C. § 1983 (Doc. 23). Two Defendants remain: Officer Fishley and Officer Phillips.[1] (*See id.* at 2–6). Plaintiff alleges that on April 19, 2023, Defendant Fishley entered Plaintiff's cell and placed him in full restraints for a call-out. (*Id.* at 8). According to Plaintiff, while submitting to leg irons, Fishley slammed him into the wall from behind and then pulled down Plaintiff's pants and underwear before shoving "his fingers into [Plaintiff's] anus." (*Id.*). Plaintiff alleges that while assaulting him, Fishley told Plaintiff, "If you don't drop that law suit, I'm gonna kill you." (*Id.*). Plaintiff contends Fishley was referring to his pending civil rights suit (No. 4:22-cv-412-MW-MAF) against "several other prison officials at Florida State Prison." Plaintiff alleges that on April 24, 2023, Fishley again entered his cell to remove Plaintiff's restraints following a call-out, and slammed Plaintiff face down on his bed, pulled down Plaintiff's pants and boxers, and again

---

[1] Plaintiff voluntarily dismissed his claims against Officer William Monlezun and Sergeant Patrick Williams. (Doc. 36).

"shove[d] his fingers into [Plaintiff's] anus," while demanding that Plaintiff drop is pending lawsuit.  (*Id.*).

Plaintiff contends that on July 3, 2023, Defendant Phillips came to his cell to remove Plaintiff's restraints following a call-out.  (*Id.* at 9).  He states Phillips said, "So you like putting law suits on my officers huh?" before slapping Plaintiff across the face and slamming him into the wall.  (*Id.*).  Plaintiff asserts Phillips then put his hand down Plaintiff's pants and squeezed his right buttocks while threatening to sexually assault him.  (*Id.*).  He alleges Phillips proceeded to throw Plaintiff to the floor before kicking and stomping on Plaintiff's left foot so hard that Plaintiff's heel broke.  (*Id.*).  Phillips then threatened to kill Plaintiff if he reported the assault.  (*Id.*).

Plaintiff alleges that Fishley's two sexual assaults caused him to suffer pain while going to the bathroom, as well as psychological injuries.  (*Id.* at 12).  He also contends that Phillips's assault caused Plaintiff to suffer a broken left foot, recurring nightmares, and constant fear.  (*Id.*).  As relief, Plaintiff requests punitive and compensatory damages, as well as injunctive relief.  (*Id.* at 14).

Defendant Phillips now moves to dismiss the Amended Complaint, arguing Plaintiff failed to exhaust his administrative remedies for his claims against Phillips before filing this case.[2]  (*See* Doc. 44).  Plaintiff filed a response in opposition to the Motion.  (Doc. 47).

---

[2] Defendant Fishley filed an Answer in response to the Amended Complaint.  (Doc. 46).

## I. EXHAUSTION

The PLRA requires that Plaintiff exhaust his available administrative remedies before pursuing a § 1983 claim about prison conditions. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted."); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006) (noting that a prisoner must exhaust administrative remedies before challenging the conditions of confinement, and concluding that the PLRA demands "proper exhaustion"). But Plaintiff need not "specially plead or demonstrate exhaustion in [his] complaint[]." *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" *Id.*

Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008); *see also Jones*, 549 U.S. at 211. The Supreme Court has instructed that while "the PLRA exhaustion requirement is not jurisdictional[,]" *Woodford*, 548 U.S. at 101, "exhaustion is mandatory . . . and unexhausted claims cannot be brought," *Pavao v. Sims*, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citing *Jones*, 549 U.S. at 211). Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies of the institution. *Woodford*, 548 U.S. at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies,

3

which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

*Id.* at 90 (citation omitted). Indeed, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Id.*

In *Ross v. Blake*, the Supreme Court instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 136 S. Ct. 1850, 1862 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" *Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322–23 (11th Cir. 2007)). In *Ross v. Blake*, the Court identified three circumstances in which an administrative remedy would be considered "not available." 136 S. Ct. 1850, 1862 (2016). First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Next, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, a remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Because failure to exhaust administrative remedies is an affirmative defense, Defendant Phillips bears "the burden of proving that [Plaintiff] has failed to exhaust his available administrative remedies." *Turner*, 541 F.3d at 1082. The Eleventh Circuit has

4

articulated a two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> In *Turner v. Burnside* we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. *Id.* Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. *Id.* at 1082–83; *see also id.* at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

*Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015). And "[a] prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." *Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010) (citations omitted).

State law "determines what steps are required to exhaust." *Dimanche v. Brown*, 783 F.3d 1204, 1207 (11th Cir. 2015); *see also Jones*, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides inmates with a three-step grievance process for exhausting administrative remedies. As the Eleventh Circuit has described it:

> The grievance procedure applicable to Florida prisoners is set out in § 33-103 of the Florida Administrative Code. Section 33-103 contemplates a three-step sequential grievance procedure: (1) informal grievance; (2) formal grievance; and then (3) administrative appeal. *Dimanche*, 783 F.3d at 1211. Informal grievances are handled by the staff member responsible for the particular area of the problem at the institution; formal grievances are handled by the warden of the institution; and administrative appeals are handled by the Office of the Secretary of the FDOC. *See* Fla. Admin. Code. §§ 33-103.005–103.007. To exhaust these remedies, prisoners ordinarily must complete these steps in order and within the time limits set forth in § 33-103.011, and must either receive a response or wait a certain period of time before proceeding to the next step. *See id.* § 33-103.011(4).

*Pavao*, 679 F. App'x at 824.  Further, an inmate may skip the informal and formal grievance steps and file a direct emergency grievance with the Office of the Secretary, if the issue involves an emergency, reprisal, protective management, admissible reading material, release date calculations, banking issues, sexual abuse committed by the warden, or HIPAA violations.  Fla. Admin. Code r. 33-103.007(3)(a).  When a prisoner files a direct emergency grievance with the Secretary, he must do so "within 15 calendar days from the date on which the incident or action which is the subject of the grievance occurred."  Fla. Admin. Code r. 33-103.011(d).

Defendant Phillips argues that Plaintiff failed to exhaust his administrative remedies.  (Doc. 44 at 12).  Phillips asserts that while Plaintiff filed several informal and formal grievances, he filed no informal or formal grievances about his claims against Phillips.  (*Id.* at 11).  He also contends that although Plaintiff filed one grievance appeal directly with the Secretary that mentioned his claims against Phillips, Plaintiff submitted that direct grievance after he filed his original Complaint.  (*Id.* at 11–12).  Phillips further argues that the Secretary returned that direct grievance because Plaintiff failed to comply with the grievance procedure as he did not first submit the grievance at the appropriate level.  (*Id.* at 12). Phillips also asserts that Plaintiff's argument that the grievance process was rendered unavailable lacks merit because his grievance documents show he regularly availed himself of the process.  (*Id.* at 14–16).  In support of his argument, Phillips provides the declaration of classification officer Marcia G. Miller; the declaration of operation analyst Lawanda Sanders-Williams; grievance appeal (log # 23-6-30489) and the Secretary's response thereto; the declaration of assistant warden of programs Jefferey McClellan; a summary printout of the informal and formal grievances Plaintiff filed

6

between April 19, 2023, and September 28, 2023; and a summary printout of the grievance appeals Plaintiff filed between May 9, 2023, and September 22, 2023. (Doc. Nos. 44-1–44-4).

In response, Plaintiff admits that he filed his Complaint before he exhausted his administrative remedies for his claims against Phillips; but he argues that he had a valid reason for that failure and asserts he eventually did exhaust his claims. (Doc. 47 at 3). According to Plaintiff, he did not exhaust his claims before filing the Complaint because Phillips threatened to kill him if he reported the assault, rendering the grievance process for those claims unavailable. (*Id.* at 3–4). Plaintiff, however, asserts that he did take other steps to safely report the incident, arguing that he had a friend file a citizen complaint online and he submitted sick-call requests about his left foot injury. (*Id.* at 6–7). He also argues that after filing the Complaint, he filed his direct grievance with the Secretary about his claims against Phillips and in retaliation for that grievance, other correctional officers assaulted him. (*Id.* at 7). In support of his unavailability argument, Plaintiff attaches his declaration. (Doc. 47-1 at 2).

Accepting Plaintiff's view of the facts as true, the Court finds that dismissal of these claims for lack of exhaustion is not warranted at the first step of *Turner*. *See Jackson v. Griffin*, 762 F. App'x 744, 746 (11th Cir. 2019) (holding disputes about availability of administrative remedies are question of fact that can bar dismissal at *Turner*'s first step). Thus, the Court proceeds to the second step of the two-part process in which the Court considers the parties' arguments related to exhaustion and makes findings of fact.

It is undisputed that Plaintiff did not complete the administrative grievance process for his claims against Phillips before filing this case on August 7, 2023, and thus those

claims are unexhausted.  (*See* Doc. 1 at 22); *see also Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000) ("[W]hen a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure *before* pursuing a § 1983 lawsuit." (emphasis added)).  Indeed, Plaintiff admits that the only grievance he filed that was related to his claims against Phillips was his direct grievance (log # 23-6-30489), which was submitted to the Secretary on September 18, 2023, forty-two days after Plaintiff filed the Complaint.  (Doc. 44-2 at 4).  Plaintiff, however, argues that his administrative remedies for these claims were unavailable prior to filing the Complaint, because on the day of the July 3, 2023 incident, Phillips told Plaintiff, "Write this up and I will kill you. This is FSP. We kill inmates at FSP."  (Doc. 47 at 3).

A prison official's threats of retaliation can render the grievance process unavailable if: "(1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude" from participating in the process.  *See Turner*, 541 F.3d at 1085.  Here, while a reasonable inmate of ordinary firmness may be hesitant about filing a grievance after receiving Phillips's threats, the record contradicts Plaintiff's argument that these threats actually deterred him from filing grievances.  Notably, between Phillips's alleged July 3, 2023 assault and the August 7, 2023, filing of the Complaint, Plaintiff filed three informal grievances, four formal grievances, and five grievance appeals.  (Doc. 44-4).  Officials received those seven informal and formal grievances within sixteen days of the alleged July 3, 2023 assault.  (*Id.* at 1–4).  And of those five grievance appeals, two contained complaints about "threats by staff" and one

8

contained allegations about "physical abuse." (*Id.* at 5–6). Also, between the filing of the Complaint on August 7, 2023, and September 28, 2023, Plaintiff filed another eight informal grievances, one formal grievance, and eight more grievance appeals. (*See generally id.*). Of those eight other grievance appeals, one contained allegations about "threats by staff" and four contained complaints about either "sexual battery" or "improper conduct (sexual)." (*Id.* at 6).

Additionally, in his declaration, FDOC employee Jefferey McClellan explains the process for collecting prisoners' grievances. (Doc. 44-3). He explains that every day, mailroom staff walk around each wing with a locked grievance box. (*Id.*). If an inmate has a grievance, the inmate will either place the grievance in the locked box or the mailroom staff will place the grievance in the locked box while within the inmate's view. (*Id.*). To that end, McClellan contends that "[a]t no point can any staff member open the grievance box to remove grievances or prevent an inmate from placing a grievance into the box without being viewed on video and breaking FD[O]C policy." (*Id.*). According to McClellan, the only person who may open the grievance box is the grievance coordinator or another assigned member who did not collect the grievances. (*Id.* at 2). He asserts that once the grievance coordinator unlocks the box, he or she removes the grievance, logs it, and sends the grievance out to the appropriate respondent. (*Id.*).

In light of this record evidence and because Plaintiff was actively availing himself of the grievance process during the relevant timeframe, the Court finds that Plaintiff was not deterred or thwarted from pursuing his administrative remedies. *See Halpin v. Crist*, 405 F. App'x 403, 407 (11th Cir. 2010) ("To the extent that he argues that he was unable to file grievances for fear of retaliation, his argument is severely undermined by the record

9

of multiple unrelated grievances he filed, both before and after the alleged incident giving rise to the fear of reprisal."); *see also Garcia v. Glover*, 197 F. App'x 866, 867–68 (11th Cir. 2006) (affirming dismissal of complaint based on failure to exhaust when the plaintiff alleged that officers "'most likely' would have 'killed' him or 'shipped' him out" if they learned the plaintiff had filed a complaint).  Thus, the Court finds that neither Plaintiff's assertions nor the evidentiary materials in the record show that the administrative remedies were unavailable to Plaintiff.  Plaintiff failed to exhaust his available administrative remedies for his claims against Phillips, and Phillips's Motion will be granted.

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant Phillips's Motion to Dismiss (Doc. 44) is **GRANTED**.
2. Plaintiff's claims against Phillips are **DISMISSED without prejudice**.  The **Clerk** shall terminate Phillips as a Defendant in this case and amend the case style accordingly.
3. A separate order will enter setting case management deadlines.

**DONE AND ORDERED** in Jacksonville, Florida, on December 4, 2024.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Jax-7
C:    Lee M. Johnson, #W40563
      Counsel of record